## THE PEOPLE a. RESTENBLATT.

*Court of General Sessions ; February,* 1855.

INDICTMENT.—GROUND FOR QUASHING.

An indictment should be quashed when it clearly appears by affidavit that it was found by the grand jury without adequate evidence to support it.

Motion to quash two indictments.

*Mr. Graham,* for the motion.

*The District Attorney,* opposed.

STUART, J.—The defendant is before the court upon two indictments for false pretences. Counsel for the accused moves to quash both indictments, upon the ground that they were found without any proofs of the commission of the offences preferred.

On the argument of the case by Mr. Graham for the prisoner, and the District Attorney for the people, it was conceded and agreed on the one side and on the other, that the preliminary affidavits of the complaining witnesses, which accompany the indictment, contained all the testimony given before the grand jury, and on which they acted in ordering these bills. I have read the complaining papers with care, and it is apparent that they not only fail to exhibit proof sufficient to indict, but are without any legal evidence whatever of a violation of the statute against false pretences. This being manifest, and having regard to the concession by the learned attorney for the people—that these primary depositions contain all and precisely the same facts, matters and things testified to by the deponents when before the grand jury, and that the grand inquest had no other evidence, knowledge or information in the premises than what is expressed by the affidavits in question—it is clearly certain that the defendant has been indicted for two criminal offences, each a felony, without legal proof, and therefore without any proof, of their perpetration. And now, upon this state of facts, (given pre-

liminarily for a better view of the case), the court is moved to go behind the indictments and take judicial notice of this want of proof for the purpose of setting them aside; thus raising the question, both new and important, whether a criminal court can pass behind the record to learn if there was any proof before the grand inquest going to establish the offence alleged, with a view to quash an indictment lawful in its composition, in accordance with the rules of pleading, and importing absolute verity upon its face. The criminal books afford almost no authority for the exercise of such a power, and I cannot find a precedent among adjudicated criminal cases either in this country or England, for so bold an intrenchment of the heretofore scarcely disputed right of a grand jury to indict whom they pleased, when they pleased, how they pleased, and for ·what they pleased, with proof or no proof as they pleased, defying the court of which they are less than a co-ordinate branch, against all review of their acts, however demanded by the rights of the citizen, or needed for ends of public justice; nor yet is there any decision involving a principle of law or rule of criminal procedure going to interdict such innovation when prudently resorted to for the attainment of truth and the administration of that justice which is the right of all men.

An indictment, as defined in *Jacob's Law Dictionary* upon several authorities cited, is a " bill or declaration of complaint, drawn up in form of law, and exhibited for some criminal offence." " It is," says Chief Justice Holt, " a plain, brief and certain narration of an offence committed by any person, and of the necessary circumstances that concur to ascertain the fact and its nature." An indictment, in the better language of Mr. Hawkins, (*Hawk. P. C.*) " is an accusation made in a prescribed legal form, *upon evidence*, by a number of authorized persons, of some criminal offence against the peace of the people, and when preferred in court, becomes a record for purposes of criminal prosecution."

The question recurs, may a " bill of complaint drawn up in legal form" be impeached for any cause? That it may, for some reasons, will not be disputed; and if for some, why not in all cases where it is manifest that the body indicting has no

jurisdiction over the subject matter on which the accusation is predicated. If a court may look upon the face of an indictment to see if it contains all the elements necessary to its validity, why may it not go over to the persons who preferred it, to see if they were duly authorized to do so—to learn if they were constituted of the number required by the statute, and if so, whether they were all qualified according to law and the like? This, it is said, is not denied. Very good. Why, then, has not the court power to inquire after any misconduct of one or more grand jurors, tending to vitiate their proceedings, or of others, going to the prejudice of their acts; or to discover whether, although a crime has been proved, it did not also appear that it was committed in a foreign State or country; or if perpetrated within the pale of their jurisdiction, whether it was not so ancient as to be without the cognizance of the criminal law; or if within, it had not been shown by the testimony of a witness infamous of crime and unpardoned of a conviction for felony; and further, of like matters? All this, I take it—certainly all except the latter instance—will not be denied by any one who has given the subject their attention. The ground, as it seems to me, for an interference by the court in cases of this nature is, that the grand jury is wholly without authority to indict, upon the well settled principle that no jurisdiction by any criminal magistracy can obtain over the subject matter of a criminal offence, except upon sworn legal testimony before a duly constituted authority; as no jurisdiction can be had of the body of a criminal offender, except by reason of his personal presence before the power having cognizance of the crime. If this be good law, with all the force of truth and the strength of justice, how may a grand jury indict any one of a crime, having, for want of proof, no jurisdiction of the subject matter of the offence; or, if they do, why may not a court go behind the record and relieve the accused of preceding imprisonment, with the care, expense, and degradation of a public trial? The answer is, not that there is any law to prevent, but that it has never been done, which, with this court, would be sufficient if justice to the citizen did not otherwise require; but when it is demanded by what are in my judgment the legal rights of

the accused, it is no answer, and shall not stay this court from a prudent and careful performance of its duty. It is, in my judgment, quite enough that a grand jury is licensed to act in secret upon *exparte* testimony in respect to all matters and persons, without permitting them to indict individuals contrary to the rules of law, and where no crime has been proved;—*as for instance,* a witness testifies before the court and jury; a spectator hears a bystander say that the evidence is corruptly false; upon this, the spectator goes before the grand jury now in session, and swears that the witness testified to something which he believes to be utterly false, as a citizen standing hard by said it was so; and upon this an indictment is ordered for perjury. Is there no relief in such a case, save a public trial? Can not the court, these facts appearing, quash the indictment for insufficiency of proof? If not, why not? The only answer is that there is no authoritive precedent. If not, it is time for one; for, if controlled by nothing else, grand juries should be bound by the rules of evidence; for upon this, more than any thing else, depends the citizen's safety. In the case of Dr. Dodd, (1 *Leach, C. L.,* 184), when the defendant was called upon to plead, he challenged the validity of the indictment upon the ground that it was found upon the testimony of incompetent witnesses. The court entertained the objection. The matter was argued by some of the most able lawyers at the English bar, before the twelve judges, and it was only because they decided that the evidence was legal and the witnesses competent, that the objection failed. It is said, I know, that the doctrine expressed in this case, never obtained as an authority, and does not now prevail as the law upon this subject. The contrary were quite as easily stated. In the case of Hulbert, (4 *Denio,* 133), the accused, after he had pleaded and on going to trial, sought to give evidence relative to the character and amount of proof before the grand jury, when the indictment was found, with a view to show that but one among a number of counts for as many misdemeanors had been proved before the body indicting him, which was denied; as that would be to impeach the grand jurors before a traverse jury, empanneled to try the accused. In the decision of this case, Judge Bronson took occasion to say that an indictment

could not be impeached, unless upon motion, by showing that it was not found upon sufficient evidence, or that there was any other fault or irregularity in the proceeding of the grand jury, and added that when the ends of public justice required it, a record ought to be set aside, and when done, that was an end of it. This law is controverted by the assertion that it is but the *dictum* of a judge in respect to a matter not embraced by the question under the consideration of the courts. Granted. It is equally the opinion of one of the ablest judges that ever held a place in the Supreme Court of this state.

An indictment is the foundation (so to speak) of a criminal prosecution, and if it is not just and lawful in all its character, it ought to be broken. Touching the two under consideration, if there was any legal proof—no matter how little—I would not combat or criticise it for the purpose of granting this motion ; but as there was no lawful evidence whatever before the grand jury to negative the truth of the pretences alleged, I am without doubt of the power of the court to set them aside, and am convinced of my duty in the matter. The motion to quash, is granted.*

---

* The District Attorney remarked, on the rendering of this decision, that his own views did not coincide with those expressed by the court, and therefore, as it was an important question, and ought to be settled by the court of last resort, he would take the liberty of reviewing the decision upon a writ of error.