### PEOPLE v. BRICKNER *et al.*

*(Court of Oyer and Terminer, Monroe County. July 16, 1891.)*

1. INDICTMENT—SETTING ASIDE—INHERENT POWER OF COURT.
    Though the only grounds on which an indictment may be set aside on defendant's motion are stated by Code Crim. Proc. N. Y. § 313, to be when the indictment is not properly indorsed, or when improper persons were permitted to be present during the session of the grand jury, the court has inherent power, in furtherance of justice, to set aside an indictment on the ground that there was no evidence before the grand jury to support it, and that material illegal evidence was received by the grand jury.

2. CONSPIRACY—EVIDENCE—SETTING ASIDE INDICTMENT.
    An indictment for conspiracy cannot be sustained without proof of the fact of the conspiracy, and it cannot be aided by the averments of acts done in furtherance of the objects of the alleged conspiracy.

Max Brickner and others were indicted for conspiracy. Defendants move to set aside the indictment.

*Raines Bros.* and *D. Hays*, for defendants.   *G. A. Benton*, Dist. Atty. and *J. Van Voorhis*, for the People.

RUMSEY, J.   The motion to set aside the indictment is made upon the grounds—*First*, that there was no legal evidence before the grand jury to support it; and, *second*, that material illegal evidence was received by the grand jury.   It is objected by the people that a motion to set aside the indictment can be made only on the grounds specified in section 313 of the Code of Criminal Procedure, and that the court has no power to set aside an indictment for any other reasons.   If that be so, of course this motion must be denied.   It is necessary, therefore, to inquire into the power which the court has over the findings of the grand jury.   At common law, the courts had uniformly held that they had the power to set aside or quash an indictment on motion, not only for defects of form, but also for errors and irregularities which were made to appear by extrinsic evidence.   I have been able to find no case in which the power has been denied.   Whether or not, however, the power will be exercised, is largely, if not entirely, a matter of discretion.   It is quite clear, too, that at common law the courts had asserted the power and their duty to set aside indictments when it was made to appear that they had been found without evidence, or upon illegal or incompetent testimony.   *U. S.* v. *Coolidge*, 2 Gall. 364; *People* v. *Restenblatt*, 1 Abb. Pr. 268; *People* v. *Briggs*, 60 How. Pr. 17.   The reason was given by Judge STORY in the case first cited above.   He says that "it is of the highest importance that no citizen be tried until he has been regularly accused by the proper tribunal.   Every indictment is subject to the control of the court," and when it has been found irregularly, and upon the mere statement of a witness without oath, it should be set aside.   The power to control its own process, and to regulate proceedings in furtherance of justice, and to avoid oppression and persecution, is inherent in the courts, and every part and portion of the court is subject to its exercise.   No reason is perceived why the grand jury alone should be free from this control.   While, as a rule, that body is so composed that the rights of citizens and of the people are safe in its hands, yet instances are not unknown where it has been moved by improper motives, and controlled by improper prejudices, and where its members have lent themselves to wicked violations of their oaths.   It would be an evil day, indeed, if any body, which has the power in secret, and almost uncontrolled, to pass upon the rights of citizens, should be entirely free from supervision, no matter what its action was or how it was brought about.   It has been said, to be sure, that the grand jury are the judges of the fact and the law.   If by that it is meant that the grand jury, upon a case presented to them, have the power, and it is their duty, to determine the facts and apply the law, it is undoubtedly true.   But if it be meant that their determination is not subject to review until the indictment found by them shall be brought to trial, if it is formally correct, it is not the law.   In the case cited Judge EARL says nothing of the kind.   His words were: "It [the grand jury] was clothed with power to determine the facts and the law, and we know of no way to review its determination, unless it be by motion to quash the indictment or in arrest of judgment."   *People* v. *Dimick*, 107 N. Y. 13, 34, 14 N. E. Rep. 178.   It will be noticed that he necessarily implies the right and duty of the court to review the action of the grand jury in a proper case.   I can conceive of no greater evil than that of a temporary body of inquisitors sitting in secret, which may at their will, upon such evidence as they choose to receive, or without any evidence, subject any citizen to the disgrace of a public arrest and accusation for a heinous crime and the expense of a trial.   In view of the influences which may sometimes be brought to bear upon grand juries, and the peculiar motives which may sometimes sway them, not a few of the states of the Union have done away with the institution, rather than to run the risk

of its evils. In all the states a serious question has arisen whether it should not be abolished, and its retention has been caused more by the difficulty of finding a substitute for it than by any desire for its continued existence. If it were to be known that this body was not under the supervision of the courts, I have no doubt that in no long time some substitute would be found for it, which would not be subject to some of the objections. The Code has not taken away the power which the court formerly possessed over indictments, but has rather enlarged it. Section 671 provides that the court may, in furtherance of justice, dismiss the indictment. The power given by this section may be exercised upon the application of the district attorney or on the motion of the court, and I have no doubt that, as the power is to be exercised in furtherance of justice, the court may act either upon its own motion, or at the suggestion of an *amicus curiæ*, or upon the request of the defendant, if he can make it appear that a proper case exists. As the court has the power to act of its own motion, certainly the fact that the situation which calls upon it to act is brought to its notice by the defendant does not take away the power. Section 313 does not limit the power of the court to set aside the indictment. Before the Code, it was discretionary with the court whether or not to entertain the motion for such relief for any reason. 1 Archb. Crim. Pr. 102. The objections specified in that section could be taken only by motion to quash or in arrest of judgment. 1 Colby, Crim. Law, 265–386; 1 Archb. Crim. Pr. 102, 178. But, with reference to the finding and presentation of the indictment, the Code has provided, by section 313, that defects or irregularities in those particulars must be attacked by motion to set aside, and the right to make the motion is given to the defendant absolutely, and as to those matters it is no longer in the discretion of the court, because the Code says that where those defects are made to appear the court must set aside the indictment. The section does not refer to motions to set aside the indictment on other grounds than those stated, but it changes the rule of the common law by giving to the defendant the legal right to move on these grounds, at the time stated, and at no other time, and taking away the discretion formerly resting with the court whether to entertain the motion or not. The section contains nothing in terms taking away the right to move on other grounds. There is a reason for mentioning these grounds in the desire to regulate the motion based upon them. Hence the rule applies that, when there is a special reason for mentioning one subject in a statute, the omission to mention some other subject does not exclude it. Suth. St. Const. § 329. The legislature has required the grand jury to receive none but legal evidence. Code Crim. Proc. § 256. It has limited the way in which that evidence may be given, (Id. § 255,) and it has forbidden them to indict without evidence which proves the crime so that a trial jury would convict, (Id. § 258,) which is evidence which proves the charge beyond a reasonable doubt, (Id. § 389.) Before the Code, if these rules were violated, the indictment might be set aside on motion, as we have seen; and the limit to the right of the court to quash the indictment for want of evidence was that if there was some competent testimony the weight of it was for the jury, (*People* v. *Strong*, 1 Abb. Pr., N. S., 244,) whereas, if there was no testimony, the court would quash, as was done by Judge STORY in *U. S.* v. *Coolidge, supra*. It must be noticed, however, that the requirement of a certain amount of evidence was not then statutory, as it is now, and that the testimony before the grand jury could not then be presented to the court on motion, as it can now, when it is taken by a stenographer. If the motion to set aside cannot now be made for the violation of the rules of the sections cited above, the defendant has no remedy for it, and that surely opens the way to evils not to be endured. So far as the decisions of the courts go since the Code, there has been no case denying the power of the courts to set aside the indictment, on motion, for causes other than those specified in section 313. The first case cited to that

point is *People* v. *Gas-Light Co.*, 5 N. Y. Supp. 19, decided by the court of general sessions of New York. The motion was made before the defendant was arraigned, by counsel who appeared specially for that purpose. The recorder held that for that reason the motion must be denied, as well as upon the further ground that it was not founded upon any of the grounds specified in the section. Code Crim. Proc. § 313. But he does not consider the question whether the motion can be made upon other grounds, nor does he attempt to decide it. The *dictum* of Judge ANDREWS in *People* v. *Petrea*, 92 N. Y. 128, 145, is not controlling. The case had been decided on the merits, and what was thrown in at the end of the opinion was not necessary to its determination. In such a case it has been said: "It is only upon points necessarily involved in the determination of causes that the judgments, even of the highest appellate courts, furnish authoritative adjudications." *Wibert* v. *Railroad Co.*, 12 N. Y. 245, 252, (DENIO, J.) The weight of adjudication is certainly that the motion to set aside may be made upon other grounds than those stated in section 313. *People* v. *Clements*, 5 N. Y. Crim. R. 288; *People* v. *Singer*, Id. 1; *People* v. *Sellick*, 4 N. Y. Crim. R. 329; *People* v. *Moore*, 65 How. Pr. 177; *People* v. *Haines*, 1 N. Y. Supp. 55; *People* v. *Price*, 2 N. Y. Supp. 414; *People* v. *White*, 6 N. Y. Crim. R. 145, note; *People* v. *O'Reilly*, Mon. O. & T., Oct., 1890; *People* v. *Clark*, 14 N. Y. Supp. 642. There is no doubt that the motion may be made upon the ground that there was no evidence to support the indictment. *People* v. *Clark*, *supra*. The opinion of Judge Story upon that subject has been quoted. It may properly be supplemented by that of the general term of the supreme court, which has said that it is the duty of the court to guard the personal rights of the citizen against the consequences of so dangerous a precedent as that of sustaining or favoring an indictment the finding of which is unwarranted by the proof. *People* v. *Hyler*, 2 Parker, Crim. R. 570, 578, *sub nom. People* v. *Baker*, 10 How. Pr. 567. The objections formerly made to entertaining the motion on this ground were that the evidence was usually so imperfectly taken that the court could not be certain that it had before it all that was presented to the grand jury, and upon which it acted. That objection is now obviated because all the evidence given to the grand jury is taken by a stenographer, and in this case it is presented to the court. As but one side of the case is heard, there can be no conflict of evidence to reconcile, and I cannot see why the court, upon such a motion, is not in a position to decide with substantial accuracy. The rule of the law is that none but legal evidence shall be received, (section 256,) and that the grand jury shall not find an indictment unless legal evidence before them is such as in their judgment would warrant a conviction by a trial jury, (section 258;) that is, would prove the defendant guilty beyond a reasonable doubt, (section 389.) See *People* v. *Hyler*, 2 Parker, Crim. R. 570. If the evidence is such that, in any possible aspect of it, a conviction might be had, the indictment should stand. But if it is so weak that the court upon the trial would, upon the same evidence, feel called upon to advise an acquittal, under section 410, the indictment should not stand.

Applying these rules, we will examine the evidence upon which this indictment was found. The indictment contains three counts, and it is for a conspiracy. Under each count there is set forth one overt act, as is required by section 171 of the Penal Code. There is no proof of any overt act on the part of any of the following defendants: Max Brickner, Louis Moore, Frank J. Sheil, Moses L. Garson, Abraham Katz, Henry Michaels, Henry Hays, Jacob A. Britenstool, and Louis Stein. I do not mean to say that overt acts are proved as to the others, but, as to those named, not even malice could say that the evidence showed any act which could by any interpretation be construed as a violation of law. The failure to show an overt act on the part of these defendants is not material if it is made to appear that they entered into a conspiracy which the overt acts alleged were the result

of. ·But, if there was no conspiracy on ·their ·part in pursuance of which these acts were done, the allegation of these overt acts would not make the indictment good as far as they are concerned, because the indictment is not good unless it sets out some overt act which can be referred to the conspiracy. Pen. Code, § 171. If the indictment is not sustained by evidence against these defendants, so that it must be quashed as to them, it must be quashed as to all. *People* v. *Eckford*, 7 Cow. 535. The other defendants also can be convicted on this indictment only for conspiracy. That is the only crime of which they are charged. The specifications, although they .may be crimes, are alleged, not as offenses for which the defendants should be punished, but simply as acts done in the perpetration of the crime, which is the conspiring. As to those defendants, also, this indictment could not properly be found unless there was evidence of the conspiracy. In every aspect of this case, therefore, the charge of conspiracy lay at the bottom of it, and, that being so, the grand jury should have had before them legal evidence of a conspiracy before they could indict these defendants. *People* v. *Snaith*, 10 N. Y. Supp. 589. When a conspiracy has been shown to exist, overt acts which may be referred to it may be proved, although such acts were those of one conspirator. But such acts of one are not admissible against the others until the conspiracy has been shown to exist, and such acts, occurring after the conspiracy has been formed, can in no case be referred to, to prove the existence of the conspiracy. *People* v. *Kerr*, 6 N. Y. Supp. 674, 702; *People* v. *Squire*, 6. N. Y. Crim. R. 475, and cases cited. Let us see, therefore, what evidence there was to show the existence of a conspiracy between all or any of the defendants. It appears from the testimony that there has been organized in Rochester a corporation called the "Clothiers' Exchange," composed of certain firms, of which some of the defendants are shown to be members. The objects of that corporation do not clearly appear. It does not appear that all the defendants are members of that exchange. It does appear that on the 7th of March last the Clothiers' Exchange, or some of them, shut up their shops, and ceased to employ their workmen. It may fairly be inferred, perhaps, that there was an arrangement to that effect between those who did it, but that one of the persons indicted took any part in it or was a party to it does not appear.

On the 23d of March a paper was published in the Rochester papers. It purported to be signed by the names of certain persons, firms, and corporations. But that any one of the signatures was genuine, or that any of the defendants ever saw it, was not attemped to be proved. The original paper was not produced, but a newspaper was shown to the witness, who said that it was the individual expression of the members of the Clothiers' Exchange; that it was not.done as a corporation; that it was signed by the names appended to it. The witness did not say that he had seen the original, nor did he swear that any one of the persons whose names were appended signed them there, nor was. it suggested that any defendant ever saw the paper. After that paper had been put before the grand jury, another printed paper was shown to the witness, not signed, to which he testified that he did not remember whether it was signed at all. "I probably signed as having written it; after they signed, that was the last I saw of it." The word "they" refers to the firms above mentioned. But it cannot refer to any defendant. The witness then. testified as follows: "There are 21 firms in the Clothiers' Exchange? Yes, sir. Wile, Brickner & Wile is one? It is the Wile-Brickner Company. It is a corporation. And Joseph Cauffman, of Cauffman & Dinkelspeil? Yes, sir. And Louis Moore? Yes, sir. And Kramer, Schwartz & Co.? Yes, sir. And Moses Garson, of Garson, Meyer & Co.? Yes, sir. And F. Shiel,—what is the first name? . Frank J. And B. Rothschild, of Rothschild, Meyer & Co.? Yes, sir. And Abram Adler, of Adler Bros.? Yes, sir. And Abram Katz? No, sir; it is Nathan Stein. Abe Katz was taken sick.

And Henry Rosenberg, of Rosenberg, Blum & Aronson? Yes, sir. And the rest of the parties named,—they all belong to the exchange? Yes, sir." It will be noticed that, while several of the defendants are named in this list, nothing is asserted of them, except, perhaps, by fair inference that they belong to the exchange. There is nothing to connect them with either paper or with any agreement. It appears with regard to these two papers that the originals were not produced; that the publication of either of them by authority of any defendant, or even with the knowledge of any defendant, was not shown; and that it did not appear that any defendant signed or authorized the signature or writing of either paper, or ever knew of its existence. There was no proof, even, that either paper was issued or signed by any members of either of the firms named. If there had been, the defendants would not be criminally liable for it, because one cannot be made criminally liable for the act of his partner, unless it appears that he authorized it expressly, or by fair implication, or that he had knowledge of it, and neither of these things appear with regard to these defendants. These papers were therefore not proved, so that the grand jury had the right to consider them, and there was nothing in the evidence to connect any defendant with them. Neither was there anything to show that the lockout was by agreement, or that the defendants knew anything of it. If these 'papers are out of the case, there is no proof whatever that the defendants conspired or agreed to do any act, illegal or legal. The offense charged is a conspiracy. This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The charge of conspiracy cannot, therefore, be aided by the averments of acts done by one or more of the conspirators in furtherance of the objects of the conspiracy. *U. S.* v. *Britton,* 108 U. S. 199, 204, 2 Sup. Ct. Rep. 531. The case must stand on the existence of proof from which the grand jury might have found the fact of a conspiracy. That failing, as it clearly does fail, the indictment cannot be sustained.

I have not considered whether the overt acts charged in the indictment are sufficiently proved, or whether the facts proved are a sufficient foundation for the allegations made. Those questions are not material, unless there is proof of the conspiracy. The indictment must be set aside, and the action dismissed, because the evidence before the grand jury did not warrant it.